## MUENCH *v.* CINCINNATI TRACTION CO.

Whether a co-employe is a superior servant or merely a fellow-servant is a question of fact to be submitted to the jury upon the evidence as to all the circumstances of the case, and not one of law to be determined by the court.

HOSEA, J.

The principal question raised upon this motion relates to the doctrine of superior as contrasted with fellow-servants.

The evidence on behalf of plaintiff tended to show that he was at work as a "helper" to Roland, the boss carpenter, in putting in a new stringer to support the track across a drain excavation, and was under his control and direction; that in doing said work it was necessary to stand in said excavation astraddle of the track and stringer to tamp in the foundation stones with a sledge hammer, and that to do said work it was necessary to bend over and downwards in such a position as to be unable to see up the track without interruption of his work; and that during the progress of the work and on previous occasions Roland had given him due warning of the approach of trucks, and he relied upon such warning being given in this instance. Roland admits that he gave the warning too late in this instance because he was "dreaming" or was "absent-minded." There was also testimony showing that in the work of the company on this and other inclined planes the men were accustomed to give warning notice to each other of the approach of trucks; and it was inferentially shown that the company made no provision otherwise for the protection of the men in their dangerous employment.

The injury to plaintiff was received while engaged as aforesaid and by reason thereof the proximate cause of the injury was claimed to be Roland's failure to give proper warning.

The motion for a new trial is based chiefly upon the refusal of the court to give certain special charges, all of

which involved as their predicate an assumption that the relation of superior servant can exist only by direct authorization by the master; or that, in the absence of a rule of the company providing for warnings to men while at work on the plane, a custom among the employes must be shown, so established and well known as to have the force and effect of a rule of the company. Upon these considerations, the court was asked to instruct a verdict for the defendant under the evidence.

These charges were properly refused. The general charge of the court was based on the theory that the relation of co-employes—whether a co-employe was a superior servant, or merely a fellow-servant—was a question of fact to be submitted to the jury upon the circumstances of the case, and not one of law to be determined by the court; and that the authority of one servant to act in a capacity representative of the master was deducible from the course of business as well as by proof of direct authorization.

Upon this review of the proceedings and charge, as necessitated by this motion, I am the more firmly assured of the correctness of this position.

As early as *Whalen* v. *Railroad,* 8 O. St., 250, the test of the relationship of co-employes of a common master—whether as being a fellow-servant or a superior—is stated as the "relation of subordination" one to the other, and this was but the corrollary of an earlier case holding co-employes to be fellow-servants where the "business is managed as much by one as by the other." *Railroad* v. *Stevens,* 20 O., 416.

That the relation may exist only in respect of the work in hand is shown in *Railroad* v. *Leach,* 41 O. St., 388, where a track hand and his foreman were held to be fellow-servants in respect to an accident upon a handcar in which they were proceeding to work. This, again, is but a concrete illustration of the principle of *Railway* v. *Lewis,* 33 O. S., 196, holding that "whether one servant is placed by a common master under control of another, thereby creating the relation of superior and subordinate, must be determined by the evidence in each particular case."

In *Railroad Company* v. *Margrat,* 51 O. S., 130 (142), the case last cited is discussed and the principle is recognized that the relation of subordination may be shown by the express rule or recognized custom of the master's business giving authority to one to direct or control another in the discharge of his duties, and that if this be shown the relation of superior and subordinate is established.

In *Wellston Co.* v. *Smith,* 65 O. S., 70, it was held that where a mine boss temporarily enjoined performance of his duties upon a miner, the miner was, as to the performance of such duties, not a fellow-servant of those employed on that work.

The case of *Railway Co.* v. *Lavally,* 36 O. S., 221, presents an analogy to the case at bar, as will appear from the following extract from the opinion:

"The claim on behalf of the company is that * * * in the matter of keeping watch and lookout for danger no relationship of superior and subordinate existed; that in this respect they were merely fellow-servants engaged in a common service. * * * The service required of these hands was peculiarly dangerous; and it was the duty of the company to make reasonable regulations or provision to protect them from the dangers to which they were exposed from moving trains and cars while engaged in the discharge of their duties. The hands, under the regulations of the company, were in charge of Fox, who, in directing their operations, was the representative of the company. No other provision seems to have been made for their government or protection. By setting Lavally to work under the car, where, by the exercise of reasonable care he could not discover an approaching train or car in time to save himself from injury, it was the duty of Fox to see that reasonable precautions were taken to guard him against such danger; and for the injury resulting from such neglect the company is liable."

And the principle of this case is reasserted in *Railway* v. *Henderson,* 37 O. S., 552, and *Dick* v. *Railway,* 38 O. S., 389.

In *Railway* v. *Murphy,* 50 O. S., 135, we have another

analogous set of circumstances. A track repairer was engaged with others in bolting rails, and the duty of deceased required him, in bolting on the splice plates, to "stoop over facing the track with his head in such a position that he could not, without interrupting the work, see any considerable distance along the track"—"but no unusual cause existed why deceased should not hear or see the train," as in fact the others did.

The court sustained the verdict and judgment below, upon the general ground that it was proper to leave to the jury the question whether, from the nature of the business and the circumstances of the case, the company should not have anticipated the necessity of giving proper warning and suitably provided for it.                   ,

Taking these cases together, the principles governing the case in hand are clear and unmistakable. The case of *Kelly Island Co.* v. *Pachuta,* 69 O. S., 462, is in line with the previous decisions and constitutes no exception. So, also, that of *Railway Co.* v. *Rigby,* 69 O. S., 184, in which the servant was ordered by telegraph to get a car ready, and in that work undertook to thaw out a frozen heater which had neither safety valve nor steam gauge, and was injured by an explosion which naturally followed. As there was no present direction or control, the servant, "Rigby, was left to his own judgment as to the manner of performing the duty." I have also considered the circuit court cases of *Packet Co.* v. *Britton* (1 C. C., N. S., 33) ; *Hill* v. *Railway Co.* (22 C. C., 291), and *Rubber Co.* v. *Tobin* (3 C. C., N. S., 59), but do not find them inconsistent with the views herein expressed as applicable to the present case. *Rubber Co.* v. *Tobin* is an exemplification of the rule in the Rigby case above cited.

The verdict of the jury seems to me a liberal one in amount, but as it is quite within the limits established by cases of this nature, I can not on this account disturb it.

Motion overruled.

*Paxton & Warrington,* for the motion.
*Horstman & Horstman,* contra.